## Lindenmuth v. Mt. Carmel Blouse Co.

*W. Irvine Wiest* and *James English, Jr.,* for plaintiff.
*Daniel F. Martini,* for defendant.

TROUTMAN, J., August 23, 1956.—This is an action in assumpsit instituted in this court under the provisions of section 16(b) of the Fair Labor Standards Act of June 25, 1938, c. 676, sec. 16, 52 Stat. 1069, as

amended, 29 U. S. C. §216(*b*), as enacted by the Congress of the United States, in which plaintiff seeks to recover overtime wages, the liquidated damages for failure to pay the same and a reasonable counsel fee.

Defendant, Mt. Carmel Blouse Corporation, filed an answer to plaintiff's complaint containing new matter. Plaintiff, Leo W. Lindenmuth, filed a reply to the new matter contained in defendant's answer. Following the filing of plaintiff's reply, defendant filed a motion for judgment on the pleadings, assigning five reasons in support thereof.

Rule 1034 (*a*) of the Pennsylvania Rules of Civil Procedure provides that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is in effect a demurrer and in considering the same the court should be guided by the same principles as were heretofore applicable in disposing of a preliminary objection in the nature of a demurrer. On such a motion the court must accept as true, even though denied, averments of fact by the opposing party which are material and relevant: Toff v. Vlahakis, 380 Pa. 512; London v. Kingsley, 368 Pa. 109, 111. A motion for judgment on the pleadings should be granted only in a case which is clear and free from doubt: Boulton v. Starck, 369 Pa. 45, 51.

Viewing the pleadings in this case with the foregoing legal principles in mind, the following material facts appear. Plaintiff was employed by defendant on November 28, 1953, as a janitor. He remained in defendant's employ until March, 1955. In this period of time his rate of pay was $.80 per hour plus time and half time for all hours work beyond 40 hours per week. Defendant paid him $54.60 each week during his employment. Plaintiff's complaint alleges that at various times during his employment he had worked

15½ hours per day and at other periods of employment worked nine hours per day. He further avers that when he left his employment the total amount earned by him was $6,391.80 and the total wages paid by defendant to him during the period of his employment was $3,439.80 and on September 2, 1955, he received a further payment of $515.26 which made total payments of $3,955.06. Plaintiff claims that there is due and owing from defendant to him the difference between the wages he earned and the wages actually paid, or the sum of $2,436.74. In addition to this amount plaintiff claims the same amount as liquidated damages for defendant's breach of his contract to pay plaintiff time and half time for all hours worked per week in excess of 40 hours and a reasonable attorney's fee, all in accordance with section 16(b) of the Fair Labor Standards Act of 1938 as amended by the Fair Labor Standards Amendments of October 26, 1949, c. 736, sec. 14, 63 Stat. 919.

Sometime after plaintiff left defendant's employ a representative of the Wages and Hours and Public Contracts Division of the United States Department of Labor computed the wages due plaintiiff under the provision of the Fair Labor Standards Act. As a result of this computation, defendant paid plaintiff $515.26 on September 2, 1955, under the supervision of the administrator of the wages and hours division. Plaintiff signed a receipt for payment of these wages, the receipt being United States Government form FO-58, a copy of which receipt is attached to defendant's answer.

In his reply, plaintiff admits that on September 2, 1955, he executed the receipt for payment of back wages in the gross amount of $515.26, less legal deduction of $96.15, and that defendant paid him the net sum of $419.11 by means of a check drawn on the Union National Bank of Mt. Carmel to plaintiff's order. Plaintiff further admits that the payment and

receipt of payment was made under the supervision of the administrator of the Wages and Hours and Public Contracts Division of the United States Department of Labor.

In plaintiff's reply to new matter, while he admits the receipt of payment on September 2, 1955, and that he executed the receipt attached to defendant's answer, he denies that he received any notice that the payment was to be payment in full of unpaid wages for the period between November, 1953, and March, 1955. He avers that the Wages and Hours and Public Contracts Division of the Department of Labor made the computation of wages due without the knowledge of plaintiff, that the Wages and Hours and Public Contracts Division of the Department of Labor did not know of all the hours worked by plaintiff between November, 1953, and March, 1955, and that the acceptance of payment by plaintiff constituted a waiver of rights to $515.26, but not to any remaining hours which may be unpaid between November, 1953, and March, 1955.

Defendant assigns five reasons in support of his motion for judgment on the pleadings. These reasons may be grouped into one proposition, namely, that the execution of the receipt on September 2, 1955, and the acceptance of the payment set forth therein which was made under the supervision of the administrator of the Wages and Hours and Public Contracts Division of the United States Department of Labor precludes plaintiff from bringing any action to recover any additional wages which may be due him.

Section 6 of the Fair Labor Standards Act of 1938, as amended, 29 U. S. C. §207(a), provides that no employer shall employ any of his employes who is engaged in commerce or in the production of goods for commerce for a workweek longer than 40 hours, unless such employe receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at

which he is employed. Section 16(*b*) of the same act, 29 U. S. C. §216(*b*), provides that any employer who violates the above provision shall be liable to the employe for the unpaid overtime compensation and an additional equal amount as liquidated damages.

Following the passage of the Fair Labor Standards Act of 1938, it was uniformly held that an employe could not waive his rights under section 16(*b*), supra. In Brooklyn Savings Bank v. O'Neil, 324 U. S. 697 (1945), the United States Supreme Court held that a release signed by an employe was not a valid defense to a suit brought under section 16(*b*). In that case the Court held: "... With respect to private rights created by a federal statute, such as §16(b), the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute".

By Act of October 26, 1949, which became effective 90 days after said date, Congress amended the Act of June 25, 1938, as amended, to include subsection (*c*), 29 U. S. C. §216(*c*), which provides, inter alia, as follows: "(*c*) the Secretary of Labor (administrator) is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."

The receipt executed by plaintiff on September 2, 1955, is a form approved by the budget bureau and printed by the United States Government printing office. The heading on the receipt contains the following: "Receipt for payment of back wages as computed

or approved by the Wages and Hours and Public Contracts Division, U. S. Department of Labor." The receipt, in plain words, declares: "I, Leo Lindenmuth, hereby acknowledge receipt of payment in full from Mt. Carmel Blouse Corp., 51 N. Spruce Street, Mt. Carmel, Pa., gross amount $515.26; legal deductions $96.15; net amount received $419.11 which represents unpaid wages due me under the Fair Labor Standards Act as amended; for the period (s) between (date) 11/53 and (date) 3/55." It likewise sets forth a portion of section 16(c) of the Fair Labor Standards Act, as amended, to the effect that if payment is under the administrator's supervision, the agreement of any employe to accept such payment shall upon payment in full constitute a waiver by such employe of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

Inasmuch as plaintiff admits that he executed the receipt under the supervision of the administrator and was actually paid the amount set forth in said paper, the said paper is prima facie evidence, at least, that all matters prior to the execution of said paper have been included and concluded. In fact, it is more than a receipt for payment of back wages for it not only states that it is payment in full but also calls to the attention of the employe that acceptance of said payment constitutes a waiver of any right that plaintiff might have had under subsection 16(b) of the Fair Labor Standards Act, as amended, and is, in fact, a release.

There is no ambiguity present in the paper signed by plaintiff and the meaning of the language used is susceptible of only one interpretation. It states that the amount acknowledged is payment in full for unpaid wages due plaintiff under the Fair Labor Standards Act, as amended, for the period between Novem-

ber 1953, and March 1955, which was the period during which plaintiff was employed by defendant.

It is well settled that a receipt is not conclusive evidence but in the absence of explanation, it is always prima facie evidence of the payment admitted: Haze v. Home Friendly Insurance Co. of Maryland, 130 Pa. Superior Ct. 366. However, where a receipt contains contractual stipulations within it, for example, if it states "in full settlement" or "paid in full", these words constitute a release and since a release is a contract, the parol evidence rule applies and it cannot be shown by parol that the money was not actually received in full settlement: Crawford v. Forest Oil Co., 189 Pa. 415.

In this case, the receipt or release given by plaintiff to defendant standing alone is a conclusive answer to plaintiff's claim and in the absence of an allegation and proof of fraud, accident or mistake, which led to his signing it, plaintiff cannot overcome its apparently conclusive effect by his own testimony or by that of his witnesses: Newland v. Lehigh Valley Railroad Co., 315 Pa. 193, 195.

Plaintiff, in his reply to the new matter contained in defendant's answer, denies that he waived his rights under section 16(b) of the Fair Labor Standards Act and sets forth four allegations in his reply in avoidance of the release which he admits that he executed.

His first allegation is that he was not notified that the payment made to him was to be payment in full of unpaid wages for the period between November 1953, and March 1955, which was the period worked by him for defendant in this case. In fact, plaintiff admits that he signed the release but denies that he had notice of the facts plainly stated therein. The Fair Labor Standards Act requires no form of notice to the employe and when the release was presented to him for his signature, the plain language of the same states that it is a receipt of payment in full representing

unpaid wages due him for the period during which he had worked for defendant. He gives no explanation as to any reason for misunderstanding the plain language contained therein. The fact that the paper was presented to him for signature and for his perusal is sufficient notice that the payment was to be payment in full of unpaid wages for the period worked by him for defendant. His pleadings do not contain any allegations that the paper was signed by any fraud practiced upon him or any accident or mistake.

The second allegation which plaintiff makes in his reply in avoidance of the legal effect of the release signed by him is that the Wages and Hours and Public Contracts Division of the Department of Labor made the computation of wages due him without his knowledge. In answer to this allegation the Fair Labor Standards Act contains no provision requiring that either the employe or the employer have any knowledge that a computation or an examination of the employment records is being made by the administrator. The act does require that the payment be agreed to by the employe and that it be supervised by the administrator, but there is no requirement that he be notified of or be present at any computation which might be made. The employe is fully protected by these provisions and if he feels that an error has been made in the computation or that the amount arrived at is not the entire amount due him, he may refuse to accept payment. He is under no obligation to accept it. However, if he does accept, he waives all rights which he may have under section 16($b$) of the act and he is plainly cautioned of this waiver in the receipt form itself. Again, plaintiff does not allege that the computation was fraudulently made or that he was misled in any way in the signing of said written receipt or release.

The third allegation which plaintiff makes in his reply in avoidance of the legal effect of the release

signed by him is that the wages and hours and public contracts division had no knowledge of all the hours worked for defendant by plaintiff between November 1953 and March 1955. While the pleadings do not aver any reason why the wages and hours division representative made a computation of plaintiff's overtime, such representative evidently came to the office of the employer to examine its payroll records and, in examining the payroll record of plaintiff, found that he was entitled to wages for overtime work and as a result of his examination computed the arrearages at $515.26. There is no allegation that defendant had anything to do with this computation. Upon being advised that he owed plaintiff the amount found to be due by the investigator, defendant agreed to pay this amount to plaintiff. The receipt which is part of the pleadings in this case is on an official form of the department and was presented under its supervision. There is no allegation on the part of plaintiff that there was any fraud practiced upon him either by defendant or the representative of the wages and hours division. The receipt is in very plain language and if there was any doubt in the mind of plaintiff at the time the check and the receipt were tendered to him, he was free to refuse to accept the amount of the check and to refuse to sign the receipt. There is no averment that there were any contemporaneous inducing promises or any misleading statements made to plaintiff which would have led him to sign the receipt in this case. If plaintiff was of the opinion that the administrator's representative did not know the full number of hours worked by plaintiff, he should have objected to the computation before accepting payment and signing the receipt.

The fourth allegation which plaintiff makes in his reply in avoidance of the legal effect of the release signed by him is that the release itself is simply a

waiver of his rights to the amount which he actually received and did not constitute a waiver of any overtime wages which might be due him in excess of the amount received by him. We can find no merit whatsoever in this proposition. The receipt or release, itself, clearly states that the acceptance of the amount named in the paper is in full payment of unpaid wages due him under the Fair Labor Standards Act, as amended, for the period in which plaintiff was employed. There is no allegation that plaintiff had performed any other work for defendant except that which was performed between November 1953, and March 1955.

. The 1949 amendment to the Fair Labor Standards Act provided a method of ending wage disputes under section 16 of the act. Prior to the amendment an employer or employe had no way of adjusting their differences concerning wages. If they agreed as to the amount due and the employe accepted the settlement, the employer was still subject to suit on the same matter at any time within two years. See Brooklyn Savings Bank v. O'Neil, supra. The 1949 amendment authorized an employe to release the employer under these circumstances if the transaction was supervised by the administrator of the wages and hours division. It was certainly the intention of Congress that the employe waived his rights to all wages for the period in dispute in accepting the amount of wages tendered him and did not constitute a waiver only as to his rights in the amount of money actually received. Plaintiff was warned that the receipt he signed constituted a waiver of his rights and when he was presented with the check and receipt in this case, he could have refused to accept the settlement and institute suit under section 16(b) for the amount he thought was due, or he could accept the payment as final settlement. The act does not contemplate that he should do both as he

is attempting to do in this case. Having made his decision to accept the payment as supervised by the administrator he is bound by his action and is no longer in a position to bring suit for additional compensation, unless he can show that the settlement was procured by fraud, accident or mistake.

In the absence of any allegation of fraud, accident or mistake, a written contract constitutes the agreement between the parties and its terms cannot be added to or subtracted from by parol evidence: Gianni v. Russell & Co., Inc., 281 Pa. 320; Bessen Bros. Inc. v. Brooks, 176 Pa. Superior Ct. 430, 436. Before parol evidence of fraud, accident or mistake can be introduced it is necessary that fraud, accident or mistake should be alleged in the pleadings. The pleadings in this case are silent. Plaintiff, in his pleadings, does not aver that the said release or waiver was procured by fraud, accident or mistake nor is there any language used in the pleadings which would indicate that the release was obtained by fraud, accident or mistake. There is no averment that plaintiff could not understand the English language nor is there any averment that plaintiff was deceived as to what was in the release executed by him. If plaintiff carelessly signed the release without reading it, he should not be relieved from the results of his own gross negligence: Bessen Bros. Inc. v. Brooks, supra, page 439. The matters which plaintiff alleges in avoidance of the release signed by him were within his immediate knowledge at the time the release was executed and in the absence of any allegation of fraud, or any other deception, the terms of the agreement cannot be added to or subtracted from by parol evidence. Consequently, there would be no issue of fact to be determined at the trial of the case and, under such circumstances, defendant's motion for judgment on the pleadings should be granted.

. Under the present state of the pleadings, the release given by plaintiff to defendant bars plaintiff from any further recovery on his alleged claim and defendant's motion for judgment on the pleadings should be granted. However, under the broad power granted in rule 1034(b), we are of the opinion that plaintiff should be given an apportunity to amend his pleadings, if possible, to aver any fraudulent representation, accident or mistake that may have induced him to sign the writing in this case.

### Order

And now, to wit, August 23, 1956, defendant's motion for judgment on the pleadings is granted and judgment is entered for defendant and against plaintiff, unless plaintiff, within 20 days from the date hereof, amends his reply to new matter in a manner consistent with the views expressed in the above opinion. Let an exception be noted for plaintiff and for defendant.

TROUTMAN, J., December 17, 1956.—This is an action in assumpsit instituted in this court under the provisions of section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U. S. C. §216(b), enacted by the Congress of the United States, in which plaintiff seeks to recover overtime wages, the liquidated damages for failure to pay the same and a reasonable counsel fee.

Defendant, Mt. Carmel Blouse Corporation, filed an answer to plaintiff's complaint containing new matter which raised the defense of release to which plaintiff filed his reply. Defendant then filed a motion for judgment on the pleadings for the reason that the acceptance of the payment as set forth in the release precluded plaintiff from bringing any action to recover additional wages. In an opinion filed August 23, 1956, this court held that the release given by plaintiff to

defendant bars plaintiff from any further recovery on his alleged claim and granted defendant's motion for judgment on the pleadings subject to an opportunity for plaintiff to amend his pleadings to aver any fraudulent representation, accident or mistake that may have induced him to sign the writing in this case.

Plaintiff filed an amended reply to defendant's new matter in which he alleges a mistake. Defendant then filed preliminary objections to the amended reply, one in the nature of a motion to strike off the reply and another in the nature of a demurrer. Plaintiff's amended reply does not allege any fraud or accident in the execution of the release nor does he attribute any mistake to defendant. The only mistake alleged by plaintiff in his amended reply is his own unilateral one.

The averments as to mistake contained in plaintiff's amended reply are to the effect that plaintiff accepted the check tendered to him by defendant under the mistaken belief that it was in full payment of unpaid wages for the period worked by him and that at the time he accepted the check, he believed that the unpaid wages owed to him by defendant were less than the amount of the check and that he did not discover that defendant owed him more than the amount of the check until about three months after the check was delivered to him and further that the check was accepted by plaintiff in the mistaken belief that it represented a full discharge of plaintiff's claim.

Without repeating the reasons advanced by the court in granting the motion for judgment on the pleadings in its opinion dated August 23, 1956, we are of the opinion that the averments contained in the amended reply filed by plaintiff in no way cure the defect contained in the previous reply. Plaintiff does not deny that he accepted the check and signed a release to the effect that the acceptance of the check was in full payment of all wages due him for the particular

period of his employment. The allegation in plaintiff's amended reply indicates that plaintiff was of the mistaken belief that the check was for more than the actual wages due him and that not until some three months later did he discover that he was not paid all of the wages due him. There are no allegations to the effect that defendant was compelled to sign the release, but on the contrary could have refused to accept the same until he made an examination of his own payroll record to determine what he claimed was due him.

The determination of the amount due plaintiff was made by a representative of the United States wages and hours division and was accepted not only by plaintiff but also by defendant. The averments of the pleadings do not present a case of mutual mistake but rather negligence or carelessness on the part of plaintiff in determining what he claimed was the amount due him from defendant. There is no averment that he cannot read the English language and if he failed to read the release which he signed, it would indicate negligence on his part rather than mistake. Furthermore, plaintiff's own averments show that he comprehended fully the terms of the settlement and that, at the time, believed that it was a payment to him of more than what was due him.

Concluding that the averments of plaintiff's amended reply fail to allege mistake which would be sufficient to set aside an agreement in writing, defendant's demurrer must be sustained.

### Order

And now, to wit, December 17, 1956, defendant's preliminary objection in the nature of a demurrer is sustained and judgment is hereby entered for defendant and against plaintiff. Let an exception be noted for plaintiff.