# Re/Max Select Realty v. DeAugustino

W. *Robert Ament,* for plaintiffs.
*Edmund L. Olszewski,* for defendants.

ST. JOHN, *J.,* August 17, 2005—This matter is before the court on defendant's (1) petition to strike a real estate broker's notice of lien and (2) request for counsel fees and costs. The dispute involves a broker's right to a lien for the nonpayment of a realtor's commission after the sale of commercial property. Two questions of first impression are presented here. First, whether a real estate broker is entitled to a statutory lien for an unpaid commission arising out of the sale of commercial property subject to a written listing agreement where the sale was not the result of the broker's services. Second, the degree of specificity required in a notice of lien describing the commercial property to be encumbered. The second issue will not be reached, however, because the court holds that real estate brokers are not entitled to a statutory lien for an unpaid commission unless the sale of the commercial property was the result of the broker's services. Accordingly, the purported liens obtained here will be stricken.

## I. BACKGROUND

Re/Max Select Realty and Paul F. Culley (plaintiffs) initiated the current action by filing a notice of lien *intending* to impose a broker's lien on commercial real estate, commonly known as Rudy and Son's Restaurant Inc. at 1641 Mercer-Grove City Road, Mercer, PA (property) formerly owned by Edward DeAugustino (defendant). On July 16, 2004, plaintiffs and defendant DeAugustino entered into a written agreement (listing agreement) whereby plaintiffs agreed to list defendant's commercial property for sale in exchange for a 7 percent commission if the property was sold while the agreement was in effect, whether plaintiffs' services obtained the buyer or not for the subject property. The listing agreement was signed on July 16, 2004, and was for a one-year term.

Defendant found a buyer for the property, through no effort of plaintiffs. Plaintiffs learned of a pending sale and filed a notice of commercial real estate broker's lien for $26,250 at the above term and number on May 27, 2005, pursuant to the Commercial Real Estate Broker's Lien Act, 68 Pa.C.S. §1051 et seq. (Purdon's 2004). Defendant sold the commercial restaurant property pursuant to a deed signed June 22, 2005. Funds in the amount of the lien are still held in escrow by the closing agent because of the potential broker's lien, pending the outcome of defendant's petition.

The parties agree that the notice of lien *did not state* the correct legal description by metes and bounds for defendant's commercial property. Instead the legal description in metes and bounds contained in paragraph 3 of the defendant's notice of lien (as well as the amended notice of lien) is residential property which was previ-

ously deeded by Yolanda DeAugustino to Richard and Linda Craig on May 4, 2001, and was duly recorded in the Mercer County Recorder of Deeds Office at 2001 D.R. 07735, not the defendant's commercial restaurant property. The property specifically described in the notice of lien is across the street from defendant's commercial property, but the metes and bounds description was preceded in the notice by the following paragraph:

*"The description of the commercial real estate that is subject to this notice* of commercial broker's lien, which is known as Rudy & Son's Restaurant Inc., 1641 Mercer-Grove City Road, Mercer, PA 16137, *is as follows:"* Plaintiffs' notice of lien ¶3. (emphasis added)

Thus, the issue is whether the property intended to be encumbered by a lien is the property specifically described by metes and bounds (which is residential property not owned by defendant DeAugustino), or the restaurant property which is identified by a street address only, or both parcels.

Defendant filed a petition to strike the commercial real estate broker's lien and requested counsel fees and court costs. Defendant argues that (1) the Commercial Real Estate Broker's Lien Act (CREBLA) does not give a commercial real estate broker an absolute right to obtain a lien on commercial real estate and did not entitle plaintiff to a lien in this case, and (2) the improper legal description of the property on the notice of lien makes the lien ineffective against the subject commercial property. Plaintiff responds that it does have a lien that is enforceable against the restaurant property (and the money held in escrow) because paragraph 3 of its notice of broker's lien refers specifically to the name of the restaurant and

the correct street address of the restaurant. Plaintiff argues also that the fact that the legal description in the nature of metes and bounds with accompanying right of ways contained in the notice of lien is non-commercial property across the street from the restaurant is not a fatal defect. In the alternative, plaintiffs request that they be granted leave of court to file another amended notice of broker's lien with the correct legal description of the commercial real estate which they believe would relate back to the original date that the first notice of broker's lien was filed, May 27, 2005. While the description contained in plaintiffs' notice of lien clearly appears to be defective, that issue will not be reached for the reasons set forth below.

## II. REAL ESTATE BROKER'S RIGHT TO A LIEN

CREBLA, which became effective May 20, 1998, is the applicable law to this situation because placing a lien on commercial real property was not an available remedy for an aggrieved real estate broker at common law. 7 P.L.E.2d Brokers §93 (2000). Disputes between real estate vendors and property owners were entirely contractual in nature at common law. *Solis-Cohen v. Phoenix Mutual Life Insurance Co.,* 413 Pa. 633, 635, 198 A.2d 554, 555 (1964) (citing *Seligsohn v. Young,* 189 Pa. Super. 510, 512, 151 A.2d 792, 794 (1959)). This contractual remedy was the only right available regardless of whether the real estate broker actually sold the real property, or merely had an agreement for a guaranteed commission upon the sale of the real property, even if the broker did not actually facilitate the final sale. See *Arthur v. Sylvester,* 105 Pa. 233, 233 (1884).

The Pennsylvania General Assembly revamped the common law by creating "real estate broker liens in the amount of compensation rendered by the broker in connection with certain real estate transactions." Statutory note following 68 Pa.C.S. §1051. The case sub judice requires the court first to determine whether a broker is entitled to a lien under CREBLA where the broker had a written listing agreement to sell the commercial property, but did not actually facilitate the sale of the commercial property. If the court finds that plaintiff had a right to a lien, it must then determine whether the broker here has perfected a lien under the statute where the notice of lien contains conflicting identification of the property to be encumbered. In either event, this is a case of first impression.

In order to attach a lien to any property, a right to that lien must exist. See *Horn & Brannen Manufacturing Co. v. Steelman,* 215 Pa. 187, 64 A. 409 (1906). Defendant argues that, as a prerequisite to filing the lien, plaintiffs must allege that their activities resulted in the procurement of a buyer pursuant to section 1053 of CREBLA. There are no published decisions interpreting section 1053. The Statutory Construction Act requires the court to rely upon the plain language of the statute itself to determine its meaning if possible. 1 Pa.C.S. §1903(a) (Purdon's 2004); *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa. Super. 497, 502, 464 A.2d 431, 434 (1983). CREBLA provides in pertinent part:

"Each broker . . . shall have a lien [in the amount of the agreed upon commission] upon commercial real estate . . . listed with the broker under the terms of a written agreement for the purposes of selling . . . any interest

in the commercial real estate that is signed by the owner . . . *and as to which the broker . . . [has] provided licensed services that result* during the term of the written agreement *in the procurement of a person* or entity that is ready, willing and able to purchase . . . the commercial real estate or any interest in the commercial real estate upon terms that are provided in a written agreement that is signed by the owner . . . or which are otherwise acceptable to the owner . . . as evidenced by a written agreement that is signed by the owner. . . ." 68 Pa.C.S. §1053(1). (emphasis added)

CREBLA, therefore, grants a limited statutory right to a lien on commercial property to a real estate broker, provided that two general requirements, pertinent hereto, are met. First, that the broker and the real property owner have signed an agreement to list the subject real property for sale. Second, during the term of their listing agreement, the broker must "provide[] licensed services that *result* . . . in the procurement of a person or entity that is ready, willing, and able to purchase . . . the commercial real estate . . . ." *Id.* (emphasis added) Stated in its simplest form, section 1053(1) requires that (1) the broker and the commercial real property owner have signed a listing agreement for the sale of commercial property, and (2) during the term of the listing agreement, the broker provides services which result in a buyer for the commercial real property. CREBLA, therefore, embodies a public policy of creating a broker's lien only where the commission was earned by the broker.[1]

---

1. Section 1053(2) contains an additional provision conferring a right to lien under CREBLA, which is wholly independent of the requirements found in section 1053(1). However, this subsection deals solely with commercial real estate brokers who sign listing agreements

Here, plaintiffs had a listing agreement with defendant, Edward DeAugustino, which is attached as exhibit "A" to the notice of lien. This agreement was in effect from July 16, 2004, and remained in effect for one year. A buyer was located by defendant DeAugustino for the commercial property while the listing agreement was in effect and it was actually sold prior to the listing agreement's date of expiration. Defendant contends, and plaintiffs have conceded, that plaintiffs' efforts did not *result* in the procurement of this buyer. Thus, the determinative factor here is that defendant DeAugustino procured the buyer for the restaurant property on his own. Since plaintiffs' actions did not result in the procurement of a buyer, plaintiffs necessarily fail the second prong of the section 1053(1) test, and consequently have no right to a lien under CREBLA.[2]

## III. SUFFICIENCY OF NOTICE OF LIEN

In their petition to strike, defendant also argues that plaintiffs' notice of lien was defective because the metes and bounds description of plaintiffs' lien actually de-

---

with either buyers of commercial real estate or landlord and tenant situations. These sections are clearly outside the realm of this opinion, though notably, section 1053(2)'s treatment of buyers of commercial real estate is different than section 1053(1)'s. In section 1053(2), the right to a lien for the buyer or landlord's broker is much broader than in section 1053(1). The broker is entitled to a lien under section 1053(2) at any point where the broker becomes entitled to compensation under the listing agreement.

2. Plaintiffs may still have cause of action for their unpaid commission for breach of contract pursuant to the listing agreement if it is an exclusive agency agreement, even though they are not entitled to a broker's lien under CREBLA since the sale here was not the result of the broker's services. 7 P.L.E.2d Brokers §77 (2000).

scribed the property across the street from defendant's commercial restaurant property. Defendant further argues that plaintiffs are not allowed to amend their notice of lien to accurately describe the property. The listing agreement does not mention a restaurant by name or generic reference, nor does it identify the street address or deed reference number to the precise property to be sold. While the description in plaintiffs' notice of lien refers in part to residential property for which CREBLA does not create a lien, the court need not reach the question of whether the mere reference to the name of the restaurant and a street address in the notice is an adequate description to create a lien on commercial property, because plaintiffs were never entitled to a lien under CREBLA in the first instance.

## IV. ATTORNEY'S FEES AND COSTS

Both parties to this action have requested attorney fees and costs for the proceedings to this point; defendant in its petition to strike, and plaintiffs in their answer to defendants' petition to strike. Under the " 'American-rule' ... parties to litigation are responsible for their own counsel fees 'unless otherwise provided by statutory authority, agreement of the parties, or some other recognized exception.' " *Mrozek v. Eiter,* 805 A.2d 535, 538 (Pa. Super. 2002) (quoting *Hart v. O'Malley,* 781 A.2d 1211, 1216 (Pa. Super. 2001)). One such statutory exception provides "[t]he following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter ... [a]ny participant in such circumstances as may be specified by statute heretofore or hereafter enacted." 42 Pa.C.S. §2503(10); *Merlino v. Delaware County,* 556 Pa. 422, 425, 728 A.2d 949, 951 (1999).

CREBLA contains a statutory provision which states "[t]he cost of proceedings, including reasonable attorney fees and prejudgment interest due to the prevailing party, shall be borne by the non-prevailing party or parties." 68 Pa.C.S. §1058(h).

The determination of what exactly constitutes a "reasonable" attorney's fee "is a matter to be decided through the sound discretion of a trial court, and an appellate court should not alter such a decision unless there has been a clear abuse of discretion." *Borough of Bradford Woods v. Platts,* 799 A.2d 984, 991 (Pa. Commw. 2002) (citing *In re LaRocca's Trust Estate,* 431 Pa. 542, 246 A.2d 337 (1968)). Pennsylvania's appellate courts have not provided a test to determine exactly what amounts to an abuse of discretion, but "[t]he trial court's judgment brings with it a presumption of correctness." *In re Condemnation by the Urban Redevelopment Authority of Pittsburgh,* 70 Pa. Commw. 230, 239, 452 A.2d 1113, 1116-17 (1982) (citing *In re Baughman's Estate,* 281 Pa. 23, 126 A. 58 (1926)).

Plaintiffs here are clearly not entitled to a lien under CREBLA. Plaintiffs, therefore, must be considered the "non-prevailing party" for the purposes of section 1058(h). See 68 Pa.C.S. §1058(h). Accordingly, plaintiffs, as the non-prevailing party, are responsible for "[t]he cost of the proceedings, including reasonable attorney fees. . . ." *Id.*

Defendant has submitted an invoice in the amount of $5,922.50 for costs and attorney fees in the proceedings for this action to this point. The invoice on its face seems excessive, especially since defendant's attorney did not present any briefs or memorandum in support of his pe-

tition to strike the lien. This total includes a filing fee of $37.50, $10 in gas mileage, and 23.5 hours of work billed at $250 an hour.[3] However, there is no corresponding evidence attached to the petition to strike or presented elsewhere by defendant to substantiate this large number. Without evidence as to exactly what work was done, how long the work took, etc., the court is completely unable to determine whether the amount that defendant has presented is reasonable or not. The court, therefore, must deny defendant's request for costs associated with this matter based upon the present record.

Hence this order:

## ORDER

And now, August 17, 2005, defendant DeAugustino's petition to strike plaintiffs Re/Max Select Realty and Paul F. Culley's commercial real estate broker's lien filed at 2005-1686 is granted. Accordingly, it is hereby ordered that any and all liens obtained by plaintiff at the above term and number pursuant to the Commercial Real Estate Broker's Lien Act are hereby stricken. Plaintiffs' request for counsel fees and costs is denied since they were not the prevailing party. Defendant's request for counsel fees and costs is also denied based upon the present record.

---

3. Defendant has merely stated on its invoice that defendant's attorney performed 23.5 hours of work between May 27, 2005 and July 11, 2005. These charges are not broken down by task and the time it took to complete the task or described in any detail for the court to review.